Robert M. GABRIELLI, Plaintiff,

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Federal Bureau of Investigation, and William H. Webster, Director, Federal Bureau of Investigation, Defendants.**

No. 83–CV–539.

United States District Court,
N.D. New York.

Aug. 29, 1984.

DeGraff, Foy, Conway, Holt–Harris & Mealey, Albany, N.Y., for plaintiff; Steven R. Sloan, Albany, N.Y., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., N.D., N.Y., Albany, N.Y., for defendants; David

R. Homer, Asst. U.S. Atty., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

This action involves a disputed request for information under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The action is brought pursuant to 5 U.S.C. § 552 and jurisdiction is predicated upon 5 U.S.C. § 552(a)(4)(B).[1] Before the Court are motions by all parties for summary judgment, Fed.R.Civ.P. 56(a), (b).

### II

Plaintiff commenced this action on May 6, 1983,[2] seeking injunctive relief directing defendants to release to plaintiff the information subject of his FOIA request. The facts underlying that request and the present action are relatively simple.

By letter dated March 3, 1982, plaintiff requested of the Federal Bureau of Investigation ("FBI") any records or other printed material pertaining to himself or his activities. On August 24, 1982, the FBI complied with plaintiff's request by releasing eight of the sixteen pages contained in its file on plaintiff. Redactions on five of the eight released pages were substantial. On August 27, 1982, plaintiff took an administrative appeal, see 5 U.S.C. § 552(a)(6)(A), of the limited disclosure provided. On November 17, 1982, the initial action by the FBI was affirmed in all respects.

The apparent basis for plaintiff's original FOIA request is an interesting, though troubling, one. Plaintiff is and has been for the past eleven years, a police officer with the New Paltz, New York, Police Department. Although it is not clear whether plaintiff was aware of this prior to his FOIA request, a complaint charging civil rights violations had been lodged against plaintiff with the FBI in July of 1980. The complaint stemmed from an incident in which plaintiff was involved in his official police capacity. After a brief investigation, the FBI determined that the complaint was unfounded. The investigation that ensued as a result of the complaint, however, led to the FBI's accumulation of a thirteen page file on plaintiff.[3] While the FBI's investigation has long since ceased, and while the incident prompting it is now more than four years old, plaintiff's curiosity apparently has been piqued by the FBI's disclosure of some of its records. For whatever reasons, plaintiff now desires to uncover all the details of the complaint made against him.

The parties are in complete agreement regarding the facts underlying the instant complaint. The issue to be resolved on these motions is whether the FBI "improperly withheld," 5 U.S.C. § 552(a)(4)(B), the information requested by plaintiff. The Court heard oral argument on both motions on May 4, 1984. Decision on the motions was reserved pending submission by defendants of unredacted copies of the requested materials for in camera review. 5 U.S.C. § 552(a)(4)(B). That submission was received in chambers on May 11, 1984, along with defendants' supplemental memorandum of law. Although afforded the opportunity, plaintiff declined to offer additional submissions.

After careful review of the unredacted documents and thorough consideration of counsels' arguments, the Court is persuaded that defendants have met their burden of establishing the propriety of their non-disclosure, see 5 U.S.C. § 552(a)(4)(B), and summary judgment in their favor therefore is warranted.

---

1. Plaintiff also asserts jurisdiction pursuant to 28 U.S.C. § 1361.

2. Although plaintiff commenced this action pro se, it now appears that he is represented by counsel.

3. While the FBI's response to plaintiff's FOIA request established that it had 16 pages relating to him, three of those pages were disclosed completely and have no bearing on either the original complaint or the present action.

III

■ At the outset, the Court must deal briefly with defendant William Webster's claim that, as an individual, he is not a proper party to this action. Specifically, defendant argues that under the FOIA, the jurisdiction of the district courts is limited to enjoining an "agency" from withholding records and to ordering production of agency records improperly withheld. *See* 5 U.S.C. § 552(a)(4)(B). In support of his contention, defendant relies on *Morpurgo v. Board of Higher Education,* 423 F.Supp. 704, 714 n. 26 (S.D.N.Y.1976), and *Ott v. Levi,* 419 F.Supp. 750, 751–52 (E.D. Mo.1976). The rule in this circuit, however, appears to be otherwise. *Diamond v. Federal Bureau of Investigation,* 532 F.Supp. 216, 220 (S.D.N.Y.1981), *aff'd,* 707 F.2d 75 (2d Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984); *see Williams v. Federal Bureau of Investigation,* 730 F.2d 882 (2d Cir.1984) (William Webster and other individuals retained as defendants); *see also Hamlin v. Kelley,* 433 F.Supp. 180, 181 (N.D.Ill.1977) ("so many cases under this statute have been sustained against heads of departments, units and agencies that their susceptibility to suit is well established"). Accordingly, this aspect of defendant's motion must be denied.

The dispositive issue concerning both parties' motions revolves around the correctness of the defendants' position that the redacted material falls within two of the FOIA's disclosure exemptions. In particular, defendants rely on 5 U.S.C. §§ 552(b)(7)(C) and 552(b)(7)(D). These sections exempt from otherwise required disclosure

> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy, [or] (D) disclose the identity of a confi-

dential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, ... confidential information furnished only by the confidential source ....

The parties do not dispute that the subject records were compiled for "law enforcement purposes." The only question remaining concerns the specific applicability of the two claimed FOIA exemptions.

### A. *Exemption (b)(7)(C)*

■ It is defendants' position that this exemption was invoked to protect the identities of FBI personnel as well as those of third parties[4] who were mentioned or identified in the course of the FBI investigation. Plaintiff does not dispute, and the Court does not doubt, that withholding the names of FBI personnel was entirely proper. *See Lesar v. United States Department of Justice,* 636 F.2d 472, 486–88 (D.C. Cir.1980); *Diamond v. Federal Bureau of Investigation,* 532 F.Supp. 216, 224 (S.D.N.Y.1981), *aff'd,* 707 F.2d 75 (2d Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984); *Lamont v. Department of Justice,* 475 F.Supp. 761, 776–77 (S.D.N.Y.1979).

With respect to third party information, defendants "acknowledge the responsibility to balance the public's right to know certain information with the third party's right to personal privacy but contend [that] the plaintiff's personal interest does not enter into this balance process." Affidavit in Support of Defendant's [sic] Motion for Summary Judgment at 5. Plaintiff, on the other hand, noting that the exemption protects only against *unwarranted* invasions of privacy, argues that "the unknown complainant's malicious and meritless action in filing an unwarranted complaint against and in causing a baseless investigation of and concerning plaintiff tilts the balance in

**4.** "Third parties" include, in this case, the complainant, whose call to the FBI instigated the FBI's investigation of plaintiff. It is clear that exemption 7(C) protects the complainant's identity to the same extent he or she is protected as

a confidential source under exemption 7(D). Exemption 7(C) also protects the privacy of other third parties whom the confidential source has revealed. *See Lame v. United States Department of Justice,* 654 F.2d 917, 922 (3d Cir.1981).

favor of disclosure." Memorandum of Law on Behalf of Robert M. Gabrielli, Plaintiff at 4. In particular, plaintiff urges that because the complainant admittedly initiated and submitted a false sworn statement involving plaintiff, "knowing such a statement would cause the FBI to investigate plaintiff, no disclosure of the details of the complaint nor of complainant's identity could possibly be considered an unwarranted invasion of complainant's privacy," *id.,* and that "by providing such a false complaint and statement, complainant subjected himself to possible prosecution, and could in no stretch of the imagination expect that the details of his complaint would never be revealed." *Id.*

■ The starting point in evaluating a claimed 7(C) exemption "involves balancing 'the privacy interest and the extent of the invasion thereof against the public interest in disclosure ... "tilt[ing] the balance in favor of disclosure." ' " *Diamond v. Federal Bureau of Investigation,* 532 F.Supp. 216, 224 (S.D.N.Y.1981), *aff'd,* 707 F.2d 75 (2d Cir.1983), *cert. denied,* ⸺ U.S. ⸺, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984) (quoting *Lamont v. Department of Justice,* 475 F.Supp. 761, 777 (S.D.N.Y.1979)); *see Department of the Air Force v. Rose,* 425 U.S. 352, 370–73, 96 S.Ct. 1592, 1603–1604, 48 L.Ed.2d 11 (1976) (exemption (b)(6)). In conducting such a balancing, the Court is constrained by "the basic policy that disclosure, not secrecy, is the dominant objective of the Act," *id.* at 361, 96 S.Ct. at 1599, and by the "oft-repeated caveat that FOIA exemptions are to be narrowly construed." *Federal Bureau of Investigation v. Abramson,* 456 U.S. 615, 630, 102 S.Ct. 2054, 2064, 72 L.Ed.2d 376 (1982).

■ "The personal privacy protected by Exemption[ ] ... 7(C) is implicated anytime revelation of the contents of information would 'subject the person to whom they pertain to embarrassment, harassment, disgrace, loss of employment or friends.' "

*Holy Spirit Association for the Unification of World Christianity v. Federal Bureau of Investigation,* 683 F.2d 562, 564 (D.C.Cir.1982) (MacKinnon, J., concurring) (quoting *Brown v. Federal Bureau of Investigation,* 658 F.2d 71, 75 (2d Cir.1981)). There is no question that such privacy interests of both the complainant and others whose names appear in the FBI records are implicated here. While the Court is distressed by the possibility of malicious motivations underlying the complainant's unfounded statements to the FBI, it cannot be said that his or her privacy interests have thereby been wholly abrogated. *See Stern v. Federal Bureau of Investigation,* 737 F.2d 84, 93–94 (D.C.Cir.1984) (recognizing privacy interest of FBI agent who participated *knowingly* in an illicit coverup but holding that such interest is outweighed by public interest in disclosure). None of the information provided by the complainant has become a matter of public record, *see Brown v. Federal Bureau of Investigation,* 658 F.2d 71, 75 (2d Cir.1981), but rather has remained protected in the FBI files as confidential matter. While there is doubtless a primitive appeal in the notion that one who maliciously provides false information to law enforcement authorities should be made to suffer the ultimate consequences of his irresponsible act, that notion is not supported by the law. In reality, deterrence of, and punishment for, such behavior is amply provided by relevant criminal statutes. *See* 18 U.S.C. § 1001;[5] *United States v. Rodgers,* ⸺ U.S. ⸺, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984). The Court simply is unable to conclude that the FOIA does not protect the privacy of all persons who are sources of information. To hold the complainant here to have waived his or her privacy rights by lodging an unfounded complaint might well set a bad precedent. Persons who suspect criminal activity, but who have no hard and fast proof, could well be deterred from provid-

---

5. 18 U.S.C. § 1001 provides, in relevant part:
 Whoever, in any matter within the jurisdiction of any department or agency of the Unit-. ed States knowingly and willfully ... makes

any false, fictitious or fraudulent statements or representations, ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

ing to law enforcement authorities what may prove to be vital information for fear that their names would be released to the parties against whom they provided information if their suspicions ultimately prove groundless. The Court therefore declines to create a privacy exception in cases where the information provided to law enforcement authorities was knowingly false. *Cf. Williams v. Federal Bureau of Investigation,* 730 F.2d 882 (2d Cir.1984) (information falling within exemption 7 categories is to be given "absolute protection," even where district court concludes that law enforcement investigation was unfounded); [6] *Holy Spirit Association for the Unification of World Christianity v. Federal Bureau of Investigation,* 683 F.2d 562, 565 (D.C.Cir.1982) (MacKinnon, J., concurring) ("Even if such suspicious ultimately prove to be unfounded, it cannot be doubted that at the time they voiced them, those communicating with the authorities could reasonably have feared reprisals against themselves or their family members").

■ Because the " 'unwarranted invasion' standard for the (b)(7)(C) exemptions is less demanding than the 'clearly unwarranted invasion' standard under (b)(6), it has been suggested that 'greater weight should be given to the claim of privacy when Exemption 7(C) is invoked.' " *Diamond v. Federal Bureau of Investigation,* 532 F.Supp. 216, 224 (S.D.N.Y.1981), *aff'd,* 707 F.2d 75 (2d Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984) (quoting *Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1136 n. 7 (4th Cir. 1977)); *see also Stern v. Federal Bureau of Investigation,* 737 F.2d 84, 91 (D.C.Cir.

1984) ("exemption 7(c) does not require a balance tilted emphatically in favor of disclosure"). Accordingly, although the privacy interest of the complainant here is less compelling than in the typical FOIA case in which an informant gives truthful information to authorities, it is nonetheless sufficient to override plaintiff's interest in disclosure.[7]

■ Even more importantly, however, despite what may, in this particular case, be only a slight privacy interest on the part of complainant, there is presented absolutely no countervailing public interest favoring disclosure. In the weighing process, "it must be remembered that it is the interest of the general public, and not that of the private litigant, that must be considered." *Brown v. Federal Bureau of Investigation,* 658 F.2d 71, 75 (2d Cir.1981). It is clear from plaintiff's complaint that the sole purpose in seeking disclosure, other than his understandable curiosity, *see Tarnopol v. Federal Bureau of Investigation,* 442 F.Supp. 5, 8 (D.D.C.1977) (plaintiff's mere personal curiosity not sufficient to justify disclosure), is to lay the groundwork for either a civil or criminal prosecution against the complainant. However commendable may be plaintiff's desire to assist in the enforcement of our laws, it is clear that this personal interest is not to enter into the balancing process. *Brown v. Federal Bureau of Investigation,* 658 F.2d 71, 75 (2d Cir.1981). First, it is authoritatively settled that "it is not the purpose of the Act to benefit private litigants by serving as an adjunct or supplement to the discovery provisions of the Federal Rules of Civil Procedure," *Miller v. Bell,* 661 F.2d 623, 626 (7th Cir.1981) (citations omitted),

6. Although the *Williams* case dealt not with an investigation known from the outset to have been groundless but rather with one determined to have been so only after its completion, the broad language employed by the court speaks persuasively to the result reached here: "We believe that [exemptions] (C) and (D) are of virtually no assurance to persons who desire confidentiality before dealing with the FBI unless the protection afforded is absolute. The mere possibility of compelled disclosure of such information under the FOIA will, we believe,

substantially impair federal law enforcement." 730 F.2d at 885.

7. It is interesting to note the irony surrounding plaintiff's request. While the Court is sympathetic to plaintiff's desire to have revealed to him information in the FBI files concerning him, it is precisely the provisions of the FOIA which plaintiff claims should not be invoked here that protect *his* privacy through prevention of disclosure of these unfortunate events to others.

*cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982), but rather simply to inform the public about the actions of government agencies. *Deering Milliken, Inc. v. Irving,* 548 F.2d 1131, 1134 (4th Cir.1977). Accordingly, "access to agency documents must be determined by the *public's* right to obtain them." *Id.* at 1135 (emphasis added).

Second, it is also clear that plaintiff's attempt to characterize this action as one seeking to vindicate an important public interest is without merit. Almost directly on point is the decision of the Seventh Circuit in *Miller v. Bell,* 661 F.2d 623 (7th Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982). There, plaintiff requested the FBI and the Justice Department to provide him with all documents relating to his complaint to the FBI that someone had wiretapped his telephone. Pursuant to exemptions 7(C) and 7(D), the FBI excised from documents it provided plaintiff the names of persons interviewed in connection with the investigation, third parties named in those interviews, and FBI agents who took part in the investigation. At oral argument, counsel for plaintiff stated that "[t]he reason Dr. Miller wants to have the names is so he can conduct an investigation to find out if those persons have any knowledge upon which he can enforce his rights under 18 U.S.C. § 2520 [the anti-wiretapping statute]." 661 F.2d at 626 n. 3. In reversing the district court's holding that the exemptions were not applicable, the court wrote: [8]

We believe that the trial court similarly overvalued the public interest to be vindicated by the plaintiff's maintenance of a private lawsuit. The court noted that a mere private interest in maintaining such a suit would not suffice, but concluded that here the private litigant's interest in such a suit would overlap that of the public, and stated, "Just as the vindication of constitutional rights by private litigants in § 1983 actions serves the public interest, the vindication of important statutory rights such as those embodied in 18 U.S.C. § 2520 also serve the public interest." Mem.Op. at 7–8. As we noted above, however, the FOIA was not enacted for the benefit of private litigants, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 143 n. 10 [95 S.Ct. 1504, 1513 n. 10, 44 L.Ed.2d 29] (1975).

The *Nix* [*Nix v. United States,* 572 F.2d 998 (4th Cir.1978)] court rejected a similar argument in a case in which the plaintiff, a prisoner, had filed an FOIA suit to discover documents relating to his alleged mistreatment by prison guards. He had also filed a suit, apparently under 42 U.S.C. § 1983, claiming that the alleged mistreatment violated his civil rights. In rejecting the argument that this created a public interest sufficient to override the guards' right to privacy, the court concluded:

> As this court observed in *Deering Milliken [v. Irving,],* 548 F.2d [1131 (4th Cir.1977)] at 1134–35, FOIA's purpose is to inform the public about the action of government agencies. It was not designed to supplement the rules of civil discovery. Thus, the right of Nix to obtain information is neither en-

---

**8.** Initially, the court rejected an argument not specifically raised here, but discussion of which is nonetheless relevant:

> As to the first of the asserted public interests, that Miller would use the information to serve as a watchdog over the adequacy and completeness of an FBI investigation, we are absolutely unpersuaded by the reasoning of the trial court. As a preliminary matter, we note that this justification would apparently apply to every FBI criminal investigation, severely vitiating the privacy and confidentiality provisions of exemptions 7(C) and (D). We further find the record demonstrates that this is not a case of sufficient public importance to

warrant such a probe of the FBI's efficiency. The plaintiff's broad unsupported hints of a government coverup or undercover surveillance fly in the face of the substance of the disclosed documents which reveal this case as one of consequence *to only one* individual. There is no allegation of wrongdoing by high-ranking government officials or indeed by any FBI personnel to support any public interest in any further probe into the thoroughness of the instant investigation. In the absence of such a showing of special public interest in testing the thoroughness of an investigation, we find it of little weight.
661 F.2d at 630 (footnote and citations omitted).

hanced nor diminished because of his needs as a litigant, but is to be measured by the right of the public to obtain the same information.

572 F.2d at 1003. We find this analysis persuasive and applicable a fortiori to this case in which no civil suit has yet been filed, and the rights assertedly violated do not rise to a constitutional level, but where the plaintiff has merely stated that he hopes to obtain information that will aid him in bringing suit. Were this the test for determining the existence of a public interest, every FOIA claimant against the FBI could override the exemption of § 7(C) by the simple expedient of claiming that he hoped to uncover violations of constitutional or statutory rights. Such a test is rife with the potential for abuse, and does not comport with the protective legislative intent embodied in the exemptions of section seven of the FOIA.

661 F.2d at 631. This same reasoning provides compelling support for this Court's conclusion that no public interest would be served by disclosure of the desired documents.

Finally, by way of contrast, it is interesting to note briefly the recent decision of the Court of Appeals for the District of Columbia Circuit in *Stern v. Federal Bureau of Investigation*, 737 F.2d 84 (D.C. Cir.1984). There, the court required disclosure of one FBI agent's name pursuant to an FOIA request notwithstanding the assertion of a 7(C) exemption. In holding that "[t]he balancing [it was] required to make under exemption 7 tips toward disclosure in the [agent's] case," *id.* at 93, the court concluded

> that it would not be an "unwarranted invasion of personal privacy" to reveal [the agent's] name, despite the potential association with notorious and serious allegations of criminal wrongdoing. He was a high-level employee who was found to have participated deliberately and knowingly in the withholding of damaging information in an important inquiry—an act that he should have known would lead to a misrepresentation

by the FBI. The public has a great interest in being enlightened about that type of malfeasance by this senior FBI official—an action called "intolerable" by the FBI—an interest that is not outweighed by his own interest in personal privacy.

*Id.* at 93–94.

The critical distinction between *Stern* and the present case is the absence here of any countervailing public interest favoring disclosure. The conclusion, therefore, is inescapable that even the minimal privacy interest enjoyed by complainant outweighs and therefore counsels against disclosure.

### B. *Exemption (b)(7)(D)*

 Defendants suggest that non-disclosure also is justified so as not to "disclose the identity of a confidential source" or disclose information furnished by a confidential source. Under this exemption, an agency must demonstrate that the confidential source gave information "under express or implied assurances of confidentiality ...." *Diamond v. Federal Bureau of Investigation*, 532 F.Supp. 216, 228 (S.D.N.Y.1981), *aff'd*, 707 F.2d 75 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984). Alternatively, courts sometimes take a "'functional' approach to such claims and have denied disclosure of the names of the interviewees and other sources where it was apparent that the agency's 'investigatory function depends for its existence upon information supplied by individuals who in many cases would suffer severe detriment if their identities were known.'" *Lamont v. Department of Justice*, 475 F.Supp. 761, 779 (S.D.N.Y.1979) (quoting *Kaminer v. NLRB*, 90 L.R.R.M. 2269, 2272 (S.D.Miss.1975)). Defendants here have made no showing that any express assurance of confidentiality was given the complainant or other interviewees. With respect to implicit assurances, the discussion of Judge Carter in *Diamond v. Federal Bureau of Investigation*, 532 F.Supp. 216, is highly relevant. In the present case, as in *Diamond*, the affidavit of the FBI's FOIA officer

provides no particulars about the interviews or the circumstances under which they were conducted which would allow the court to assess whether assurances of confidentiality could reasonably be inferred. Rather, [the affidavit] states quite generally that "Persons interviewed often assume, quite logically, that the information they furnish is for the assistance of the FBI only in the fulfillment of its responsibilities, and their identities and the act of their cooperation with the FBI will not be publicly exposed." Nor are the explanations and descriptions of the deleted material which precede the individual documents more forthcoming. As a result, nothing in the record before this court indicates why assurances of confidentiality could reasonably be inferred other than the assertion by [the agent] that such is the case.

532 F.Supp. at 229–30. This Court joins in Judge Carter's conclusion that

> [s]ince the burden is on the government to justify the non-disclosure ... [it] cannot accept an unsupported statement that each interview was conducted under an implied assurance of confidentiality. Nor have defendants justified their assertion of a 7(D) exemption by affirming, in blanket fashion, that its interviews were all conducted under circumstances in which assurances of confidentiality could reasonably be inferred. Even if interviewees often assume their identities will be protected when they volunteer information to the FBI, it cannot be determined from the record before the court whether the interviewees even knew that their interviewer was an FBI agent. Nor can it be concluded from the government's submissions what the interviewees were told about the subject of the Bureau's investigation, and whether they would properly have felt it to be "highly sensitive and serious," such that their confidentiality should be assured.

*Id.* at 230–31 (footnotes and citations omitted).

Finally, the Court reiterates Judge Carter's expression in footnote twelve of his decision that the similarity of FBI affidavits presented in support of non-disclosure from case to case "engenders concern that the government has not reviewed these documents and the interviewees' circumstances individually, but rather has relied on boilerplate assertions which amount to no more than the claim that any interview conducted by its agents conveyed implicit assurances of confidentiality." 532 F.Supp. at 230 n. 12. Accordingly, summary judgment in defendants' favor with respect to the confidential source exception would appear not to be warranted in light of this inadequate showing. Nonetheless, after reviewing the subject documents, the Court is of the opinion that all the redactions are entirely supported by reliance on the 7(C) privacy exemption and any questions regarding the propriety of a 7(D) exemption are therefore academic. *See Times Newspapers of Great Britain, Inc. v. Central Intelligence Agency,* 539 F.Supp. 678, 685 n. 4 (S.D.N.Y.1982).

## IV

On balance, the Court is satisfied that defendants properly relied on exemption 7(C) in redacting and withholding the subject documents. Moreover, the Court is persuaded that the scope of the defendants' redactions was entirely reasonable to the extent that such was necessary to adequately protect the privacy of third persons. *See Kanter v. Internal Revenue Service,* 433 F.Supp. 812, 821–22 (N.D.Ill. 1977); 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided ... after deletions of the portions which are exempt under this subsection"); *see also Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242, 260–61 (D.C.Cir.1977) (non-exempt portions of documents must be disclosed unless they are "inextricably intertwined" with exempt portions); *Winter v. National Security Agency/Central Security Service,* 569 F.Supp. 545, 549 (S.D.Cal. 1983); *Ray v. Turner,* 468 F.Supp. 730, 736 (D.D.C.1979). Because the privacy inter-

ests at stake are not outweighed by any public interest in disclosure, plaintiff is not entitled to the relief he seeks here. Accordingly, plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted and the action is dismissed. The materials submitted for in camera review are returned herewith to counsel for defendants.

It is so Ordered.